## IN THE UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL NO. 20-** |
| **v.** | : | **DATE FILED:** |
| **STEVEN J. VALENTINO** | : | **VIOLATIONS:** |
| **MICHELE MILLER** | | **18 U.S.C. § 371 (conspiracy to pay and** |
| **LEAH AFOLABI** | : | **receive kickbacks – 1 count)** |
| | | **42 U.S.C. §1320a-7b(b)(1) and (2) (paying** |
| | : | **and receiving kickbacks – 6 counts)** |
| | | **Notice of forfeiture** |

## I N D I C T M E N T

## COUNT ONE

### (Conspiracy to Pay and Receive Kickbacks)

**THE GRAND JURY CHARGES THAT:**

At all times material to this Indictment:

1.      Defendant STEVEN J. VALENTINO ("VALENTINO") was a doctor of

osteopathy who held himself out as a provider for orthopedic medicine and surgery.

VALENTINO was licensed to practice medicine in the Commonwealth of Pennsylvania and the

State of New Jersey. VALENTINO operated a medical practice that focused on orthopedic

medicine and surgery at two locations: Steven J. Valentino, D.O. P.C., d/b/a Valentino Spine and

Orthopedics and Liberty Spine Care, located at 700 S. Henderson Rd, Suite 110, King of Prussia,

Pennsylvania ("Valentino Spine PA"); and Steven J. Valentino, D.O. N.J. P.C., d/b/a Steven

Valentino D.O. Spine Surgery and Valentino Spine & Orthopedics, located at 556 Egg Harbor

Road, Suite A, Sewell, New Jersey ("Valentino Spine NJ") (collectively referred to as

"Valentino Spine").  VALENTINO maintained signatory authority on a Valentino Spine PA

bank account at Wells Fargo bank, account number ending in 2424 ("Valentino Spine PA x2424").

      2.      Defendant MICHELE MILLER ("MILLER") was an employee of Valentino Spine, since at least 2013. MILLER was also the owner of Miller Healthcare Consulting LLC ("Miller Healthcare"), a corporation located in Swarthmore, Pennsylvania. MILLER maintained signatory authority on a Miller Health Care bank account at TD Bank, account number ending in 8496 ("Miller Health Care x8496"). Miller also maintained signatory authority on Valentino Spine PA x2424.

      3.      Defendant LEAH AFOLABI ("AFOLABI") owned MedX Pharmacy LLC ("MedX"), a compounding pharmacy located in Missouri City, Texas. MedX participated in numerous federal and private insurance health care plans, including the Department of Labor Office of Workers' Compensation Program ("DOL-OWCP") and the Medicare Program. AFOLABI maintained signatory authority on a MedX bank account at Wells Fargo bank, account number ending in 3998 ("MedX x3998").

      4.      Individual 1 was a co-owner of MedX.

      5.      Individual 2 was the owner of Company 1, a corporation located in Bala Cynwyd, Pennsylvania. Individual 1 maintained signatory authority on a Company 1 bank account at Citizens Bank, account number ending in 2564 ("Company 1 x2564").

      6.      Individual 3 was an employee of Company 1.

***Federal Health Care Benefit Programs***

      7.      The Federal Employees' Compensation Act ("FECA") provided for payment of workers' compensation benefits to federal employees who suffered an injury, disease or death in the performance of duty. To establish a claim for benefits, a medical condition was

required to be causally related to a claimed injury, disease or death. Benefits were only available while a work-related condition continued. The benefits under FECA included continuation of pay for up to 45 calendar days, compensation for lost wages, all necessary medical care, medical supplies, prescription drugs, vocation rehabilitation services, and disability payments. FECA provided coverage for medications necessary to treat symptoms, which were the result of a work-related injury if the medications were prescribed by a doctor and medically necessary.

8.      DOL-OWCP administered the benefits under FECA. Providers of health care services were required to enroll with DOL-OWCP using Form OWCP-1168 in order to receive a provider identification number and reimbursement under FECA. By completing and submitting Form OWCP-1168, a provider certified that all the federal and state licensure and regulatory requirements applicable to their provider type were satisfied.

9.      DOL-OWCP contracted with Affiliated Computer Services ("ACS") to serve as the billing administrator for FECA to provide medical claims processing and payments. In this capacity, ACS received provider enrollment forms from prospective FECA providers, assigned provider numbers, and processed and paid claims for benefits under FECA.

10.     All providers were required to enroll with DOL-OWCP through ACS. After the assignment of a provider number, the provider was given access to the ACS online system through which the provider may submit bills, check the status of pending claims, and perform other billing related functions. On each claim, providers were required to identify the services provided. The submission of a claim, and acceptance of payment, by a provider represented that the service for which reimbursement was sought, was performed as described, medically necessary and appropriate, and properly billed in accordance with accepted industry standards. Billing for medically unnecessary services and prescribing unnecessary medications

3

were not within industry standards.  All claims were required to be supported by medical evidence.

11.     Medicare was a federally-funded health care program that provided benefits to persons who were at least 65 years old or disabled.  Medicare was administered by the Centers for Medicare and Medicaid Services ("CMS"), a federal agency under the United States Department of Health and Human Services ("HHS").  Individuals who received benefits under Medicare were referred to as Medicare "beneficiaries."  Medicare was divided into multiple parts:  Part A covered hospital inpatient care, Part B covered physicians' services and outpatient care, Part C was Medicare Advantage Plans, and Part D covered prescription drugs.

12.     Part D prescription drug benefits were administered by private insurance plans that were funded by Medicare through CMS.  Beneficiaries obtained Part D benefits by joining a prescription drug plan operated by private insurance companies (typically called drug plan sponsors) approved by Medicare to administer Part D benefits; or they could join a Medicare Advantage plan that covered both prescription drugs and medical services.  Medicare compensated the drug plan sponsors for providing the prescription drug benefit to the beneficiary.  Medicare, through CMS, compensated the Medicare drug plan sponsors.  Medicare paid the sponsors a monthly fee for each Medicare beneficiary of the sponsors' plans.  Such payments were called capitation fees.  The capitation fee was adjusted periodically based on various factors, including the beneficiary's medical conditions.  In addition, in some cases where a sponsor's expenses for a beneficiary's prescription drugs exceeded that beneficiary's capitation fee, Medicare reimbursed the sponsor for a portion of those additional expenses.

13.     Generally, Medicare Part D covered prescription drugs only when, among other requirements, the services were medically necessary, ordered by a physician, actually

provided, and not induced by the payment of remuneration, i.e., kickbacks and bribes, whether paid in cash or in kind.

14.     A pharmacy could participate in the Part D program by contracting with the plan sponsors, or a Pharmacy Benefit Manager ("PBM"), which provided Medicare Part D coverage.  As part of the enrollment application, the provider certified that the provider understood that payment of a claim was conditioned on the claim and the underlying transaction complying with Medicare regulations, Medicare program instructions, the law, and on the provider's compliance with all applicable conditions of participation in Medicare.

15.     Medicare required that claims for reimbursement be submitted electronically.  Generally, a pharmacy submitted numerous claims simultaneously to a Part D plan for payment.  Then, the Part D plan either sent a reimbursement check to the pharmacy or initiated an electronic transfer of funds to the pharmacy's bank.

16.     In submitting a claim to Medicare, a health care provider certified, among other things, that the services were actually rendered to the patient and that the services were medically necessary.

17.     DOL-OWCP and Medicare were each a "federal health care program" as defined in Title 42, United States Code, Section 1320a-7b(f) and a "health care benefit program" as defined in Title 18, United States Code, Section 24(b).

**The Kickback Conspiracy**

18.     From at least in or about May 2013 until in or about July 2017, the defendants, STEVEN J. VALENTINO, MICHELE MILLER, and LEAH AFOLABI, together with each other and others, including Individual 1, Individual 2, and Individual 3, conspired to

5

pay and receive illegal health care kickback payments in exchange for the referral of prescription medications for DOL-OWCP and Medicare patients.

19.     Defendant STEVEN J. VALENTINO enrolled as a provider with DOL-OWCP and Medicare.  As part of his Medicare enrollment, he certified that he would abide by the Medicare laws, regulations and program instructions, including the Federal Anti-Kickback Statute.

20.     Defendant LEAH AFOLABI, together with Individual 1 and others, paid kickback payments to Individual 2 and Individual 3 in return for the referral of prescriptions for medications, including compound pain creams, written by defendant STEVEN J. VALENTINO for DOL-OWCP and Medicare beneficiaries who were patients at Valentino Spine PA and Valentino Spine NJ.

21.     Individual 2 and Individual 3, in turn, paid kickback payments to defendants STEVEN J. VALENTINO and MICHELE MILLER in return for the prescriptions for medications, including compound pain creams, that defendants VALENTINO and MILLER sent from Valentino Spine PA and Valentino Spine NJ to MedX.  The kickback checks for VALENTINO were payable to Valentino Spine PA.  Generally, MILLER received approximately ten percent of the kickback amount paid to VALENTINO.  Initially, MILLER was to receive her portion of the kickback from the kickback paid to Valentino Spine PA, but MILLER later received kickback checks from Individual 2 and Individual 3 directly to her company, Miller HealthCare.

22.     From in or about May 2013 to in or about July 2017, defendant LEAH AFOLABI, through MedX, submitted and caused to be submitted approximately $2.5 million in claims to DOL-OWCP that were procured by kickbacks to defendant STEVEN J. VALENTINO,

defendant MICHELE MILLER, Individual 2 and Individual 3. Of that $2.5 million billed, DOL-OWCP paid approximately $1.1 million. From in or about February 10, 2015 to in or about July 4, 2017, defendant LEAH AFOLABI, through MedX, submitted and caused to be submitted claims at least $63,000 in claims to Medicare Part D that were procured by kickbacks to defendant STEVEN J. VALENTINO, defendant MICHELE MILLER, Individual 2 and Individual 3. Of that at least $63,000 billed, Medicare paid approximately $63,000.

23.     Upon receiving reimbursement from DOL-OWCP and Medicare for the claims, the defendant LEAH AFOLABI transferred funds through a MedX bank account to Company 1 for the payment of illegal kickbacks and bribes.

24.     In order to conceal the illicit kickback relationship, defendants STEVEN J. VALENTINO and MICHELE MILLER received checks from Individual 2 and Individual 3 that were identified as "business advisory" or "consulting" expenses purportedly for legitimate business services when, in fact, the payments were illegal kickbacks paid in return for patient referrals.

25.     From in or about March 2013 to in or about March 2017, defendant LEAH AFOLABI paid Individual 2 and Individual 3 approximately $234,000 in return for the referral of prescriptions for medications written by defendant STEVEN J. VALENTINO for DOL-OWCP and Medicare beneficiaries who were patients at Valentino Spine PA and Valentino Spine NJ. From in or about March 2013 to in or about March 2017, Individual 2, together with others, paid defendants STEVEN J. VALENTINO and MICHELE MILLER approximately $113,000 in return for the referral of prescriptions for medications written by defendant STEVEN J. VALENTINO for DOL-OWCP and Medicare beneficiaries who were patients at Valentino Spine PA and Valentino Spine NJ.

26.     From at least in or about May 2013 to in or about July 2017, in the Eastern District of Pennsylvania, and elsewhere, defendants

**STEVEN J. VALENTINO,
MICHELE MILLER, and
LEAH AFOLABI**

knowingly and willfully conspired and agreed with each other and with others known and unknown to the Grand Jury, including Individual 1, Individual 2, and Individual 3, to commit certain offenses against the United States, that is: (1) to solicit and receive remuneration, specifically, kickbacks and bribes, directly and indirectly, overtly and covertly, in cash and in kind, in return for referring individuals, specifically, DOL-OWCP and Medicare beneficiaries to MedX, for the furnishing of and arranging for the furnishing of any item and service for which payment may be made in whole and in part by DOL-OWCP and Medicare; and for the purchasing, leasing, ordering, and arranging for and recommending the purchasing, leasing and ordering of any good, item and service for which payment may be made in whole and in part by DOL-OWCP and Medicare, contrary to Title 42, United States Code, Section 1320a-7b(b)(1); and (2) to offer and pay remuneration, specifically, kickbacks and bribes, directly and indirectly, overtly and covertly, in cash and in kind, in return for referring individuals, specifically,  DOL-OWCP and Medicare beneficiaries to MedX, for the furnishing of and arranging for the furnishing of items and services for which payment may be made in whole and in part by DOL-OWCP and Medicare; and for the purchasing, leasing, ordering and arranging for and recommending the purchasing, leasing and ordering of any good, item, and service for which payment may be made in whole and in part by DOL-OWCP and Medicare, contrary to Title 42, United States Code, Section 1320a-7b(b)(2).

8

## OVERT ACTS

27.     In furtherance of the conspiracy and to effect its objects, within the Eastern District of Pennsylvania and elsewhere, the defendants STEVEN J. VALENTINO, MICHELE MILLER, and LEAH AFOLABI, together with others, including Individual 1, Individual 2, and Individual 3, committed and caused to be committed, among others, the following overt acts:

(a)     On or about January 19, 2016, defendant LEAH AFOLABI wrote check number 1571 in the approximate amount of $19,800 payable to Company 1, drawn on MedX x3998.

(b)     On or about January 28, 2016, defendant STEVEN J. VALENTINO caused the deposit of check number 548 into Valentino Spine PA x2424, in the approximate amount of $6,000, payable to Valentino Spine PA, drawn on Company 1 x2564.

(c)     On or about January 28, 2016, defendant STEVEN J. VALENTINO caused the deposit of check number 549 into Valentino Spine PA x2424, in the approximate amount of $600, payable to Valentino Spine PA, drawn on Company 1 x2564.

(d)     On or about January 28, 2016, defendant MICHELE MILLER deposited check number 547 into Miller Health Care x8496, in the approximate amount of $3,500, payable to Miller Healthcare, drawn on Company 1 x2564.

(e)     On or about June 20, 2016, defendant LEAH AFOLABI wrote check number 1242, in the approximate amount of $9,360, payable to Company 1, drawn on MedX x3998.

       (f)       On or about July 19, 2016, defendant LEAH AFOLABI generated Wells Fargo Bill Pay check number 0032396859, in the approximate amount of $20,000, payable to Company 1, drawn on MedX x3998.

       (g)       On or about July 25, 2016, defendant STEVEN J. VALENTINO caused the deposit of check number 644 into Valentino Spine PA x2424, in the approximate amount of $3,350, payable to Valentino Spine PA, drawn on Company 1 x2564.

       (h)       On or about July 25, 2016, defendant STEVEN J. VALENTINO caused the deposit of check number 645 into Valentino Spine PA x2424, in the approximate amount of $350, payable to Valentino Spine PA, drawn on Company 1 x2564.

       (i)       On or about July 25, 2016, defendant MICHELE MILLER deposited check number 643 into Miller Health Care x8496, in the approximate amount of $3,300, payable to Miller Healthcare, drawn on Company 1 x2564.

       (j)       On or about September 1, 2016, defendant MICHELE Miller deposited check number 679 into  Miller Health Care x8496, in the approximate amount of $3,500, payable to Miller Healthcare, drawn on Company 1 x2564.

       All in violation of Title 18, United States Code, Section 371.

## COUNTS TWO THROUGH THREE

### (Payment of Health Care Kickbacks)

**THE GRAND JURY FURTHER CHARGES THAT:**

1.    Paragraphs One through 25 of Count One are incorporated here.

2.    On or about the dates set forth below, within the Eastern District of Pennsylvania and elsewhere, the defendant

**LEAH AFOLABI,**

with others, including Individual 1, knowingly and willfully offered and paid remuneration, specifically, kickbacks and bribes, directly and indirectly, overtly and covertly, in cash and in kind, in return for referring individuals, specifically, DOL-OWCP and Medicare beneficiaries to MedX, for the furnishing of and arranging for the furnishing of items and services for which payment may be made in whole and in part by DOL-OWCP and Medicare; and for the purchasing, leasing, ordering and arranging for and recommending the purchasing, leasing and ordering of any good, item, and service for which payment may be made in whole and in part by DOL-OWCP and Medicare.

| Count | Approximate Date | Kickback |
|-------|------------------|----------|
| TWO | June 20, 2016 | Check number 1242, in the amount of $9,360, payable to Company 1, drawn on MedX x3998. |
| THREE | July 19, 2016 | Wells Fargo Bill Pay check number 0032396859, in the approximate amount of $20,000, payable to Company 1, drawn on MedX x3998. |

All in violation of Title 42, United States Code, Section 1320a-7b(b)(2) and Title 18, United States Code, Section 2.

## COUNTS FOUR THROUGH SEVEN

### (Receipt of Health Care Kickbacks)

**THE GRAND JURY FURTHER CHARGES THAT:**

1.      Paragraphs One through 25 of Count One are incorporated here.

2.      On or about the dates set forth below, within the Eastern District of Pennsylvania and elsewhere, the defendants,

### STEVEN J. VALENTINO and MICHELE MILLER,

together and with others, including Individual 2 and Individual 3, knowingly and willfully solicited and received kickbacks and bribes, directly and indirectly, overtly and covertly, in cash and in kind, in return for referring individuals, specifically, DOL-OWCP and Medicare beneficiaries to MedX, for the furnishing of and arranging for the furnishing of items and services for which payment may be made in whole and in part by DOL-OWCP and Medicare; and for the purchasing, leasing, ordering, and arranging for and recommending the purchasing, leasing and ordering of any good, item and service for which payment may be made in whole and in part by DOL-OWCP and Medicare.

| Count | Defendant | Approximate Date | Kickback |
|-------|-----------|------------------|----------|
| FOUR | VALENTINO | July 25, 2016 | Check number 644, in the amount of $3,350, payable to Valentino Spine PA, drawn on Company 1 x2564. |
| FIVE | VALENTINO | July 25, 2016 | Check number 645, in the amount of $350, payable to Valentino Spine PA, drawn on Company 1 x2564. |
| SIX | MILLER | July 25, 2016 | Check number 643, in the amount of $3,300, payable to Miller Healthcare, drawn on Company 1 x2564. |
| SEVEN | MILLER | September 1, 2016 | Check number 679, in the amount of $3,500, payable to Miller Healthcare, drawn on Company 1 x2564. |

All in violation of Title 42, United States Code, Section 1320a-7b(b)(1) and Title 18, United States Code, Section 2.

## **NOTICE OF FORFEITURE**

**THE GRAND JURY FURTHER CHARGES THAT:**

      1.     As a result of the violations of Title 18, United States Code, Section 371, and Title 42, United States Code, Section 1320a-7b, set forth in this Indictment, defendants

**STEVEN J. VALENTINO,**
**MICHELE MILLER, and**
**LEAH AFOLABI**

shall forfeit to the United States of America any property, real or personal, that constitutes, or is derived, directly or indirectly, from the gross proceeds traceable to the commission of the offenses.

      2.     If any of the property subject to forfeiture, as a result of any act or omission of the defendants:

         (a)     cannot be located upon the exercise of due diligence;

         (b)     has been transferred or sold to, or deposited with, a third party;

         (c)     has been placed beyond the jurisdiction of the Court;

         (d)     has been substantially diminished in value; or

         (e)     has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 18, United States Code, Section 982(b),

incorporating Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendants up to the value of the property subject to forfeiture.

All pursuant to Title 18, United States Code, Section 982(a)(7).



GRAND JURY FOREPERSON

_Ronald A Sarach_ for

WILLIAM M. McSWAIN
United States Attorney
Eastern District of Pennsylvania

ROBERT ZINK
Chief, Fraud Section
Criminal Division

No.2018R0767

## UNITED STATES DISTRICT COURT

*Eastern District of Pennsylvania*

## _Criminal Division_

THE UNITED STATES OF AMERICA

vs.

**STEVEN J. VALENTINO, MICHELE MILLER, AND LEAH AFOLABI**

### INDICTMENT

18 U.S.C. § 371 (conspiracy to pay and receive kickbacks – 1 count)
42 U.S.C. §1320a-7b(b)(1) and (2) (paying and receiving kickbacks – 6 counts)
Notice of forfeiture

Notice of forfeiture

_____
Foreman

Filed in open court this _____ day,

Of _____ A.D. 20 _____

_____
Clerk

Bail, $ _____