IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | CRIMINAL ACTION |
| v. | : | |
| | : | No. 20-309 |
| STEVEN J. VALENTINO, et al. | : | |

**MEMORANDUM**

**Schiller, J.**                                                                                                **June 3rd, 2022**

      Defendants Dr. Steven J. Valentino and Michelle Miller are charged with conspiracy to pay and receive health care kickbacks in violation of 18 U.S.C. § 371 and receiving health care kickbacks in violation of 42 U.S.C. § 1320a-7b(b)(1). Trial is scheduled to commence on September 7, 2022. Presently before the Court are the following pretrial motions: (1) Dr. Valentino's Motion for Severance (ECF No. 104); (2) Dr. Valentino's Motion to Suppress and for a *Franks* Hearing (ECF No. 107); (3) Dr. Valentino's Motion to Dismiss Indictment, for Evidentiary Hearing, and for Disclosure of Grand Jury Testimony (ECF No. 102); and (4) Miller's Motion to Dismiss Counts VI and VII Against Her (ECF No. 101). For the reasons that follow, each of the defendants' motions will be denied.

      **I.**      **DR. VALENTINO'S MOTION FOR SEVERANCE**

      Dr. Valentino argues that his trial must be severed from Miller's because a joint trial would improperly prejudice his right to a fair trial. He points to "four categories of statements allegedly made by Miller" that, if introduced, would serve as the root of this prejudice: "1) Miller's January 16, 2020 Statement [to the Government]; 2) Cooperating Witnesses'[1] testimony about statements

---

[1] "Cooperating Witnesses" refers to Dr. Valentino and Miller's alleged coconspirators with whom the Government has entered into plea and cooperation agreements.

1

allegedly made by Miller that Cooperating Witnesses claim relate to Miller's [] separate business dealings . . . ; 3) Cooperating Witnesses' testimony about statements allegedly made by Miller that the Cooperating Witnesses and the government claim relate to the alleged conspiracy; and, 4) double hearsay statements, in which the Cooperating Witnesses would testify to statements allegedly made by Miller, which in turn contain statements allegedly made by Dr. Valentino." (ECF No. 104 at 5-6 (footnote added).) Dr. Valentino also claims that he and Miller were improperly joined as defendants.

The Court finds that Miller's statements do not necessitate severance. The Court also finds that joinder is proper. The Court addresses each of these arguments in turn.

### A.   Severance and Miller's and the Cooperating Witnesses' Statements

Fed. R. Crim. P. 14 provides that a court may "sever the defendants' trials" if "the joinder of offenses or defendants in an indictment . . . appears to prejudice a defendant or the government." Here, Dr. Valentino believes that he would be prejudiced by a joint trial that includes as evidence Miller's January 2020 voluntary statement to the Government, as well as Miller's various statements to the Cooperating Witnesses. He argues that his trial should be severed from Miller's because the jury would unfairly attribute Miller's statements to him, therefore causing confusion and making it difficult for the jury to reliably assess Dr. Valentino's independent guilt or innocence. He avers that he would be further prejudiced because of his inability to confront Miller about her statements, since, as a co-defendant, she would presumably be unavailable for cross-examination. Meanwhile, Dr. Valentino believes that Miller's statements would constitute inadmissible hearsay at an individual trial.

Whether to sever rests within the sound discretion of the court. *Zafiro v. United States*, 506 U.S. 534, 538-39 (1993). In making this determination, the court must balance the potential

prejudice to the defendant with the advantages of joinder in terms of judicial economy. *United States v. Tutis*, 167 F. Supp. 3d 683, 692 (D.N.J. 2016). On one hand, severance is permitted where a joint trial presents a substantial risk of prejudice to the defendant by "compromis[ing] a specific trial right of one of the defendants, or prevent[ing] the jury from making a reliable judgment about guilt or innocence." *Zafiro*, 506 U.S. at 539. On the other, "defendants jointly indicted should be tried together to conserve judicial resources. The public interest in judicial economy favors joint trials where the same evidence would be presented at separate trials of defendants charged with a single conspiracy." *United States v. Eufrasio*, 935 F.2d 553, 568 (3d Cir. 1991) (citations omitted).

A defendant bears a "heavy burden in gaining severance," *United States v. Quintero*, 38 F.3d 1317, 1343 (3d Cir. 1994), and must "pinpoint clear and substantial prejudice resulting in an unfair trial." *United States v. Riley*, 621 F.3d 312, 335 (3d Cir. 2010). Even where the risk of prejudice may seem high, less drastic measures than severance "often will suffice to cure any risk of prejudice." *Zafiro*, 506 U.S. at 539. As such, "the appropriate question for the Court on a motion under Rule 14 is whether the jury can 'reasonably be expected to compartmentalize the evidence as it relates to the separate defendants in view of its volume and limited admissibility.'" *United States v. Adens*, Crim. A. No. 12-616, 2015 WL 894205, at *1 (E.D. Pa. Feb. 27, 2015) (quoting *United States v. Serubo*, 460 F. Supp. 689, 694 (E.D. Pa. 1978)).

Here, the Court finds that the risk of prejudice or jury confusion is insufficient to warrant severance. The Indictment alleges that Dr. Valentino and Miller engaged in a single conspiracy with others, including the Cooperating Witnesses, to pay and receive kickbacks in exchange for the referral of prescription medication. *See Tutis*, 167 F. Supp. 3d at 693 (finding that "prejudice from a joint trial would be minimal" when defendant and his co-defendants were charged with engaging in a single conspiracy). A clear limiting instruction can sufficiently neutralize any

3

prejudice. And at trial, this Court will instruct the jury to "separately consider the evidence against each defendant on each of the offenses charged," and inform the jury that its "decision on any one defendant or any one offense . . . should not influence [its] decision on any of the other defendants or offenses." *United States v. Torner*, Crim. A. No. 07-343, 2018 WL 3546561, at *9 (M.D. Pa. July 24, 2018) (quoting *United States v. Stanton*, 605 F. App'x 110, 115 (3d Cir. 2015)) (quotation marks omitted); *see also Zafiro*, 506 U.S. at 540. Jurors are presumed to follow their instructions. *Stanton*, 605 F. App'x at 115 (citing *Richardson v. Marsh*, 481 U.S. 200, 211 (1987)).

Further, despite Dr. Valentino's protestations to the contrary, the Court does not view this case as being overly complex: trial is scheduled to take place over only two weeks and, at this point, should involve only two defendants and five counts. Courts have denied severance in cases involving far more. *See, e.g.*, *United States v. Stout*, 499 F. Supp. 598, 601-02 (E.D. Pa. 1980) (collecting cases in which the denial of severance was held as proper in more complex criminal actions involving multi-week and -month trials featuring up to sixty-five counts and fourteen defendants). Dr. Valentino's argument regarding the purported greater strength of the evidence against Miller than him is also unavailing since "[t]he introduction of evidence more damaging to one defendant than another does not entitle the seemingly less culpable defendant to a severance." *United States v. McGlory*, 968 F.2d 309, 340 (3d Cir. 1992).

The Court also refuses to accept Dr. Valentino's blanket statement that severance is appropriate because Miller's statements to both the Government and the Cooperating Witnesses would constitute inadmissible hearsay in an individual trial. The meat of Dr. Valentino's motion urges the Court to prematurely endorse, at this still-early juncture, the proposition that the Government will be unable to "proffer[] evidence of the existence of the conspiracy and [Dr. Valentino's] knowing membership in it," *Tutis*, 167 F. Supp. 3d at 693, in light of an apparent

4

"evidentiary void concerning any agreement by Dr. Valentino" to agree to or participate in a conspiracy. (ECF No. 104 at 15.) Dr. Valentino seems to believe that the Court agreeing with him on this point would prevent any coconspirator statements from being admitted at all, since establishing a conspiracy is a prerequisite for admission and the Government is apparently unable to do so based on Dr. Valentino's singular read of the evidence.

Under Fed. R. Evid. 801(d)(2)(E), a coconspirator's statement made during and in furtherance of the conspiracy is admissible against all coconspirators—not just the declarant. It is well-established in this Circuit that "the control of the order of proof at trial is a matter committed to the discretion of the trial judge." *United States v. Gambino*, 926 F.2d 1355, 1360 (3d Cir. 1991). Accordingly, in a matter involving a conspiracy, "there is no requirement that the Government prove the existence of the conspiracy before offering extrajudicial statements into evidence." *United States v. Borish*, 452 F. Supp. 518, 526 (E.D. Pa 1978). The only requirement is that "the Government's proof *at trial* must show a conspiracy existed between the declarant and the defendant." *Id.* (emphasis added). And once at trial, "the Government need not prove the existence of a conspiracy before it offers into evidence the statements of a defendant": the statements "may be conditionally admitted into evidence . . . subject to a subsequent demonstrat[ion] of their connectivity." *Id.*

Here, trial is still more than three months away, and Dr. Valentino seeks to put the cart before the horse in having the Court decide now, based on little more than his word and select exhibits appended to his motion, that he was *not* involved in a conspiracy at all. It can and will not. Dr. Valentino's contention that "[t]rial is too late for the Court to determine the existence of a conspiracy," (ECF No. 116 at 5), plainly does not comport with the law of this Circuit. *See United States v. Williams*, Crim. A. No. 95-407, 1996 WL 539593, at *3 (E.D. Pa. Sept. 17, 1996) (citing

5

*Gambino*, 926 F.2d at 1360) ("Although we are required to make a preliminary determination on the admissibility of coconspirator statements, there is no requirement that this determination be made at any certain point in time.") (quotation marks omitted).

Further, in the event a conspiracy is established, "acts and statements of coconspirators in furtherance of the charged conspiracy are admissible even against a single, severed defendant at trial, if the government satisfies Fed. R. Evid. 801(d)(2)(E) by proffering evidence of the existence of the conspiracy and the defendant's knowing membership in it." *Tutis*, 167 F. Supp. 3d at 693. Thus, "even if the Court granted severance, much, if not all, of the evidence concerning [Dr. Valentino's] alleged conspirators could still be presented as against him." *Id.* Here, Dr. Valentino improperly equates his apparent lack of conversations with the Cooperating Witnesses with the impossibility of the existence of a conspiracy and, as such, the admittance of their statements at an individual trial. And even if it is ultimately the case that the evidence establishes that Dr. Valentino never directly communicated with the Cooperating Witnesses, this does not wholesale eliminate their statements from introduction: direct communication is not a requirement to establish a conspiracy, as one "can be inferred from evidence of related facts and circumstances from which it appears as a reasonable and logical inference, that the activities of the participants . . . could not have been carried on except as the result of a preconceived scheme or common understanding." *United States v. Canzater*, Crim. A. No. 20-3070, 2022 WL 327008, at *1 (3d Cir. Feb. 3, 2022) (quoting *United States v. Gibbs*, 190 F.3d 188, 197 (3d Cir. 1999)).

The Court also finds that severance is not warranted on the basis of a potential *Bruton* problem in Dr. Valentino being unable to confront his co-defendant about her statements. *Bruton v. United States*, 391 U.S. 123 (1968). The Supreme Court has held that "admission of a non-testifying co-conspirator's statement against a defendant does not offend the Confrontation Clause

6

as long as the statement satisfies the co-conspirator exclusion of Federal Rule of Evidence 801(d)(2)(E)." *United States v. Jones*, 381 F. App'x 148, 151 (3d Cir. 2010) (citing *Bourjaily v. United States*, 483 U.S. 171, 182-83 (1987)). Additionally, the Government has represented that, should it seek to introduce Miller's January 2020 statement to the Government at trial, it will propose *Bruton* redactions for the Court's consideration in advance of trial. (ECF No. 115 at 14.)

The Court will also not grant severance based on potential double hearsay problems regarding statements made by Miller to the Cooperating Witnesses that may contain statements made by Dr. Valentino. Fed. R. Evid. 805 states that hearsay within hearsay is admissible if each part of the combined statements conforms with an exception. Whether this conformation exists will be determined at a later time.

Accordingly, Dr. Valentino's motion for severance is denied.

### B. Misjoinder Under Fed. R. Crim. P. 8(b)

Fed. R. Crim. P. 8(b) states that an indictment "may charge 2 or more defendants if they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses." Dr. Valentino argues that severance is proper because the Government's evidence is bereft of any agreement by Dr. Valentino to enter into or engage in a conspiracy and, as such, Dr. Valentino and Miller did not "participate[] in the same act or transaction, or in the same series of acts or transactions" as required by Fed. R. Crim. P. 8(b) for joinder. "A 'transactional nexus,' or a logical relationship between charges, is all that is required for them to be considered part of the same 'transaction.'" *United States v. Askew*, Crim. A. No. 17-291, 2019 WL 1531986, at *3 (M.D. Pa. Apr. 9, 2019) (quoting *United States v. Taylor*, Crim. A. No. 15-214, 2018 WL 5830254 at *2 (M.D. Pa. Nov. 7, 2018)).

The Court disagrees and finds that Dr. Valentino and Miller were properly joined. Although Dr. Valentino again points to the purported insufficiency of the Government's evidence as proof of a misjoinder, "[i]n determining whether joinder of charges and defendants is proper under Federal Rule of Criminal Procedure 8, we focus primarily upon the indictment." *United States v. Robles*, 855 F. App'x 804, 808 (3d Cir.), *cert. denied sub nom. Torner v. United States*, 142 S. Ct. 140 (2021) (citing *United States v. Irizarry*, 341 F.3d 273, 287 (3d Cir. 2003)). Here, the Indictment clearly demonstrates a "transactional nexus" between Dr. Valentino and his alleged coconspirators, including Miller. It charges that Dr. Valentino and Miller conspired to pay and receive kickbacks in exchange for the referral of prescription medication, with Dr. Valentino prescribing those medications. (ECF No. 1 ¶¶ 18-26.) It also charges that the kickback payments flowed from the coconspirators (including the Cooperating Witnesses) to both Dr. Valentino and Miller, who deposited those payments into their bank accounts at the same time.[2] (*Id.* ¶ 27.)

Dr. Valentino was properly joined with Miller. Accordingly, his motion to sever is denied on this ground.

**II.    DR. VALENTINO'S MOTION TO SUPPRESS**

Dr. Valentino argues that all evidence obtained via the January 16, 2020 execution of four search warrants should be suppressed. He believes that Agent Erica Faust, Special Agent for the United States Department of Labor's Office of Inspector General, omitted material information in

---

[2] The Government has further stated its intent to introduce evidence at trial showing that Dr. Valentino's prescription of medications tracks the timing of his receipt of the kickback payments. (ECF No. 115 at 7.) Namely, the Government alleges that the pharmacy to which Dr. Valentino referred the prescriptions last billed for them in July 2017, after he received his final payment. *See United States v. Teva Pharms. USA, Inc.*, Crim. A. No. 20-200, 2022 WL 137971, at *5 n.1 (E.D. Pa. Jan. 14, 2022) (citing *United States v. McGill*, 964 F.2d 222, 242 (3d Cir. 1992)) ("When deciding a motion for misjoinder, courts may consider pretrial documents, including but not limited to the indictment, as well as contentions by the government on what evidence they intend to proffer at trial.").

8

her Affidavits of Probable Cause appended to the warrants either knowingly and intentionally or with reckless disregard for the truth, necessitating an evidentiary hearing consistent with *Franks v. Delaware*, 438 U.S. 154 (1978), and, ultimately, the suppression of the fruits of the searches. (ECF No. 107 at 4-5.)

> In *Franks*, the Supreme Court held that
>
>> where the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request. In the event that at that hearing the allegation of perjury or reckless disregard is established by the defendant by a preponderance of the evidence, and, with the affidavit's false material set to one side, the affidavit's remaining content is insufficient to establish probable cause, the search warrant must be voided and the fruits of the search excluded to the same extent as if probable cause was lacking on the face of the affidavit.
>
> *Franks*, 438 U.S. at 155-56.

"[T]he right to a *Franks* hearing is not absolute." *United States v. Pavulak*, 700 F.3d 651, 665 (3d Cir. 2012). A defendant must make a "substantial preliminary showing" to be entitled to a *Franks* hearing by showing that (1) "the affiant knowingly or recklessly included a false statement in or omitted facts from the affidavit," and (2) "the false statement or omitted facts are necessary to the finding of probable cause." *Id.* "[N]egligence or innocent mistake" is insufficient to constitute reckless disregard for the truth. *United States v. Yusuf*, 461 F.3d 374, 383 (3d Cir. 2006). "Omissions are made with reckless disregard for the truth when an [affiant] recklessly omits facts that any reasonable person would want to know." *Id.* at 383-84. An omission is "necessary to the finding of probable cause" if, after the court removes the "falsehood created by an omission by supplying the omitted information to the original affidavit," the defendant has demonstrated that "probable cause does not exist under the corrected affidavit, *i.e.*, that the deficiency in the affidavit was material to the original probable cause finding." *Id.* at 383. An affiant "cannot make

9

unilateral decisions about the materiality of information, or, after satisfying him or herself that probable cause exists, merely inform the magistrate or judge of inculpatory evidence." *Wilson v. Russo*, 212 F. 3d 781, 787 (3d Cir. 2000). To carry his burden, a defendant cannot "rest on mere conclusory allegations or a mere desire to cross-examine, but rather must present an offer of proof contradicting the affidavit, including materials such as sworn affidavits or otherwise reliable statements from witnesses." *Yusuf*, 461 F.3d at 383 n.8 (quotation marks omitted).

Dr. Valentino highlights several pieces of omitted information purportedly at issue, but the Court finds that he has not made the requisite preliminary showing entitling him to a *Franks* hearing in connection with any of this information.

First, Dr. Valentino emphasizes "two points the Agent evidently believed to be material to the magistrate judge's determination that probable cause existed: 1) that the patients did not find the compound cream prescribed by Dr. Valentino to be effective; and 2) that the patients were not given a choice of pharmacy and/or were not given the prescription to bring to the pharmacy of their choice." (ECF No. 107 at 5.) He contends that Agent Faust's omission of "opposite" information—that "[a]lmost an equal number of patients told the government that they found the compound pain creams effective as those who said the compound pain creams were ineffective" and "[a]t least one patient told the agents that she was given a prescription to bring to her pharmacy"—"directly undermined several of the factual predicates for probable cause." (*Id.* at 5, 16.) The Court finds, however, that this does not constitute a substantial preliminary showing of an intentional or reckless omission material to the affidavits. Whether or not the creams helped some patients or that one patient was given a prescription to fill at a local pharmacy does not "offer proof contradicting" the extensive evidence in the affidavits supporting that Dr. Valentino

10

prescribed medication—helpful or not—in exchange for kickbacks. *Yusuf*, 461 F.3d at 383 n.8. Probable cause would still exist with this information included.

Second, Dr. Valentino disputes Agent Faust's "failure to identify her particular experience with mail order or compound pharmacies and/or pharmacy fraud," questioning how "a magistrate judge [can] determine whether the agent's opinion can be reasonably relied upon" without this information. (ECF No. 107 at 5-6.) Here too Dr. Valentino does not make a substantial preliminary showing of an intentional or reckless omission material to the affidavits. Dr. Valentino's argument regarding Agent Faust's experience, framed entirely in hypothetical questions, constitutes the conjectural, "mere[ly] conclusory allegations" that both the Third Circuit and the Supreme Court have deemed insufficient to warrant a *Franks* hearing. *Yusuf*, 461 F.3d at 383 n.8; *see also Franks*, 438 U.S. at 171. Meanwhile, Agent Faust outlines her considerable experience participating in a variety of health care fraud investigations, including those involving the payment and receipt of illegal kickbacks. (*See, e.g.*, ECF No. 107 at 30-31.) And Dr. Valentino's assertion that probable cause was established solely through statements that are "conclusory" because of Agent Faust's purported lack of relevant experience with pharmacies ignores the non-pharmacy-related, detailed evidence supporting probable cause she also describes in the affidavits, including information concerning bank records, claims data, and the statements of Dr. Valentino's former and current employees.

Third, Dr. Valentino posits that "Agent Faust's conclusion that probable cause existed is premised on a number of business practices and factual predicates that Agent Faust determined were indicative of criminal activity," but, as demonstrated by a report by "expert in pharmacy operations" Dr. Anne Marie Youlio, these practices and predicates were "in fact lawful and routine business practices of mail order and compound pharmacies." (*Id.* at 6.) But Dr. Youlio's findings

11

and Agent Faust's alleged omission of similar information do not constitute a substantial preliminary showing of an intentional or reckless omission material to the affidavits. Information regarding the legal, unique nature of compound pharmacies, as well as information regarding the fact that prescriptions are routinely submitted electronically and directed to particular pharmacies, does not contradict the evidence establishing probable case in the affidavits. Nowhere do Agent Faust or the Government argue that compound pharmacies themselves or their medications are illegal, ineffective, or abnormal, or that electronic prescriptions submitted to compound pharmacies for mail-ordered medication indicate suspicious activity. There is still probable cause because it is entirely possible for Dr. Valentino's allegedly illegal kickback conspiracy to operate within an otherwise legal enterprise.

Finally, Dr. Valentino takes issue with Agent Faust including information regarding Dr. Valentino's practice's "relationship with a second pharmacy," Patient Direct RX ("PDRX"), while omitting "that the United States Attorney's Office for the Middle District of Florida had already investigated PDRX and, in meetings with PDRX's counsel, had been provided exculpatory information that the business model of PDRX and its related entities had been approved by legal counsel." (*Id.*) He believes this constitutes "another significant material omission, especially since the Agent used PDRX as a substantial basis for her opinion that probable cause existed and to negatively impact how the magistrate judge viewed Dr. Valentino." (*Id.*) However, neither the "approv[al]" of PDRX's business model by PDRX's corporate counsel, nor Dr. Valentino's opinion that such information was "exculpatory," has any bearing on whether evidence of a kickback scheme between Dr. Valentino and PDRX was present at the locations that were the subject of the warrants. The omission of this information therefore does not constitute a substantial preliminary showing of an intentional or reckless omission material to the affidavits.

Dr. Valentino has failed to make a substantial preliminary showing that the alleged omissions were material to a finding of probable cause, omitted knowingly, intentionally, or recklessly. Accordingly, Dr. Valentino's motion to suppress will be denied without a *Franks* hearing.

### III. DR. VALENTINO'S MOTION TO DISMISS

Dr. Valentino also moves to dismiss all counts against him in the Indictment. Under Fed. R. Crim. P. 12(b)(3)(B), a defendant may file a pretrial motion "alleging a defect in the indictment or information," and a district court may review the sufficiency of the indictment to ensure "that legally deficient charges do not go to a jury." *United States v. Bergrin*, 650 F.3d 257, 268 (3d Cir. 2011). A motion to dismiss the indictment "is not . . . 'a permissible vehicle for addressing the sufficiency of the government's evidence.'" *Id.* at 265 (quoting *United States v. DeLaurentis*, 230 F.3d 659, 660-61 (3d Cir. 2000)). Instead, a district court asks "whether the facts alleged in the indictment, if accepted as entirely true, state the elements of an offense and could result in a guilty verdict." *Id.* at 268. To sufficiently state a claim, an indictment "must be a plain, concise, and definite written statement of the essential facts constituting the offense charged and must be signed by an attorney for the government." Fed. R. Crim. P. 7(c)(1). Generally, an indictment is "deemed sufficient if it: (1) contains the elements of the offense intended to be charged, (2) sufficiently apprises the defendant of what he must be prepared to meet, and (3) allows the defendant to show with accuracy to what extent he may plead a former acquittal or conviction in the event of a subsequent prosecution." *United States v. Vitillo*, 490 F.3d 314, 320 (3d Cir. 2007) (citation omitted).

Here, the Court finds that the Indictment is sufficient as a matter of law because it satisfies Fed. R. Crim. P. 7 by describing the offenses charged concretely and in detail; as such, "the facts

13

alleged in the indictment, if accepted as entirely true, state the elements of an offense and could result in a guilty verdict." *Bergrin*, 650 F.3d at 265. Meanwhile, Dr. Valentino's motion to dismiss does little more than attempt to argue the merits of this case. Like his motion for severance, Dr. Valentino's argument for dismissal centers on his belief that the Government, based on the evidence produced to date, would not be able to demonstrate Dr. Valentino's role or association with any conspiracy at trial. It is not appropriate at this time for the Court to reach a determination regarding this purely factual issue. Dr. Valentino is free to reraise these arguments at trial, but he does not present grounds for dismissal or an evidentiary hearing now.

Much of Dr. Valentino's motion to dismiss also rehashes the arguments he made in various earlier discovery motions seeking grand jury material. In those earlier motions, the Court found that Dr. Valentino failed to demonstrate a particularized need for that material, and its mind has not been changed here. (*See* ECF No. 111.) In all fairness, Dr. Valentino filed the instant motion to dismiss before the Court ruled on his earlier motions—but the fact remains that Dr. Valentino, with his second bite at the apple, relies only on his speculation that the Government may have erroneously communicated with the grand jury about the sufficiency of the evidence or engaged in improper conduct to obtain the Indictment. And these views are seemingly based upon only his personal interpretation of the evidence. A presumption of regularity attaches to grand jury proceedings. *United States v. Educ. Dev. Network Corp.*, 884 F.2d 737, 740 (3d Cir. 1989). Dr. Valentino has not rebutted that presumption. And as the Court stated in its earlier Order, "[g]rand jury materials may not be disclosed to the defendant for the purpose of a fishing expedition or to satisfy an unsupported hope of revelation of useful information." (ECF No. 111 (quoting *United States v. Slade*, Crim. A. No. 12-0367, 2013 WL 3344341, at *5 (E.D. Pa. July 3, 2013).)

Dr. Valentino's motion to dismiss is therefore denied.

IV.     **MILLER'S MOTION TO DISMISS**

Miller argues that the Indictment's substantive counts involving her should be dismissed because the Government failed to establish a cognizable crime in violation of 42 U.S.C. § 1320a-7b(b)(1) (the "Anti-Kickback Statute") against her. She claims that because she is not a health care provider, she was unable to make "referrals" for medication as required under the statute because she "does not have the capacity make these solely medical, clinical decisions." (ECF No. 101 at 4, 11.) But the only case she cites in support of this proposition—*Miles*—is inapposite, as it involved a home health services company that allegedly paid kickbacks to a public relations company. *United States v. Miles*, 360 F.3d 472, 479-80 (5th Cir. 2004). There, the Fifth Circuit found that the public relations company never "referred" anyone to the home health services company, but simply "engaged in advertising activities on behalf of" the company with no "authority to act on behalf of a physician in *selecting* the particular home health care provider." *Id.* at 480 (emphasis in original).

Here, the Indictment alleges that Miller received kickbacks in exchange for prescription referrals signed by Dr. Valentino that were sent to a compound pharmacy, which has nothing to do with advertising services. And Miller's role as a non-health care provider has no bearing on her ability to be charged under the Anti-Kickback Statute; indeed, *Miles* even plainly states that "[t]here are [] certain situations where payments to non-doctors would fall within the scope of the statute." *Id.*; *see also United States v. Crane*, 781 F. App'x 331, 335 (5th Cir. 2019) (quoting *United States v. Shoemaker*, 746 F.3d 614, 627 (5th Cir. 2014)) (emphasizing the "narrow[ness]" of *Miles* since it "did not turn on the status of the payee as a relevant decisionmaker but on the *payer's* intent to induce referrals, which is illegal, and the intent to compensate advertisers, which is permissible") (quotation marks omitted) (emphasis in original); *Shoemaker*, 746 F.3d at 629

15

(citing *United States v. Polin*, 194 F.3d 863, 866 (7th Cir. 1999)) ("[W]e did not hold in *Miles* that a payee with 'relevant decisionmaker' status is an independent, substantive requirement of the [Anti-Kickback Statute]. Such a novel move would be tantamount to re-writing the statutory text, which, as noted above, criminalizes payments to 'any person[s],' so long as they are made with the requisite intent."); *United States v. Krikheli*, Crim. A. No. 08-528, 2009 WL 4110306, at *5 (E.D.N.Y. Nov. 24, 2009) ("The language of the [Anti-Kickback Statute] does not state or imply that a defendant must pay a 'decision-maker,' and this Court perceives no basis for reading that requirement into the statute.").

The Court finds that Miller was properly charged in the Indictment and the allegations contained within concerning her adequately allege violations of the Anti-Kickback Statute. Any factual argument regarding her role in the alleged scheme—including whether she had control or influence over the referrals made—is not appropriate for addressing at the motion to dismiss stage.

Miller also makes arguments similar to Dr. Valentino's about the sufficiency of the indictment under Fed. R. Crim. P. 7's standards. Here too the Court finds that the Indictment is sufficient as a matter of law because it describes the offenses charged concretely and in detail, and "the facts alleged in the indictment, if accepted as entirely true, state the elements of an offense and could result in a guilty verdict." *Bergrin*, 650 F.3d at 265.

Accordingly, Miller's motion to dismiss is denied.

## V.   CONCLUSION

For the reasons stated, Dr. Valentino's and Miller's motions are all denied. An Order consistent with this Memorandum will be docketed separately.